UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARWYN LEWIS,<br><br>        Plaintiff,<br><br>    v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>        Defendants. | No. 1:20-cv-00693-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS ACTION BE DISMISSED, WITH PREJUDICE, FOR FAILURE TO STATE A CLAIM AND FAILURE TO COMPLY WITH COURT ORDER<br><br>(ECF Nos. 1, 8)<br><br>TWENTY-ONE DAY DEADLINE |

      Plaintiff Darwyn Lewis ("Plaintiff") is a federal inmate proceeding *pro se* and *in forma pauperis* in this civil rights action. Plaintiff filed the Complaint commencing this action on May 18, 2020. (ECF No. 8). The Complaint brings claims concerning the safety of the water at his institution of confinement, Atwater USP.

      The Court issued a screening order on July 16, 2020, explaining why Plaintiff's complaint failed to state any cognizable claims and giving Plaintiff an opportunity to file an amended complaint or stand on his complaint, subject to findings and recommendations to the District Court. (ECF No. 7).

      On August 10, 2020, Plaintiff filed a document entitled "First Amended Complaint." (ECF No. 8). However, on September 1, 2020, the Court found the document is not a true

1

amended complaint. (ECF No. 11). That document does not set forth all his facts or claims. It does not state who are defendants Plaintiff intends to sue. Instead, it refers to Plaintiff's earlier complaint, gives more information about some of the facts set forth in his original complaint, and makes arguments why the Court's screening order was wrong and disregarded his rights. Plaintiff also included an attached "Questionnaire" with questions for the Court asking if the courts were aware of certain facts.

The Court advised Plaintiff of the reasons for his failures and provided various legal standards that related to Plaintiff's allegations. (*Id.* at 1-5). It granted Plaintiff with leave to file a second amended complaint or to notify the Court he wished to stand on his May 18, 2020 complaint within thirty days. (*Id.* at 5). The Court also advised Plaintiff that "[f]ailure to comply with this order may result in the dismissal of this action." (*Id.* at 6).

The thirty-day period has expired, and Plaintiff has not filed an amended complaint or otherwise responded to the Court's order. Accordingly, for the reasons described in the screening order, the Court's earlier orders, and below, the Court will recommend that Plaintiff's case be dismissed for failure to state a claim and failure to comply with a court order.

**I.     SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). As Plaintiff is proceeding *in forma pauperis* (ECF No. 6), the Court may also screen the complaint under 28 U.S.C. § 1915. "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not

required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. *Id.* at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. *Iqbal*, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after *Iqbal*).

## II. ALLEGATIONS IN THE COMPLAINTS

For completeness, the Court will summarize both the original complaint and the document entitled "First Amended Complaint."

### A. Allegations in Original Complaint

Plaintiff's original complaint alleges as follows:

Plaintiff has had a burning in his stomach and abdominal area, and his skin has been discolored since February 2019. The discoloration started on his chest, stomach and abdominal area, and it has spread to his neck and face. This has been caused by contaminated water at Atwater USP California. These symptoms did not start until he spent a substantial amount of time at Atwater.

Defendant Hanson, Health Services Administrator at Atwater, told Plaintiff twice "There is nothing we can do." Defendant Heldman, special housing unit lieutenant at Atwater, also said that he could not take pictures despite Plaintiff's request, also on two occasions. Defendant Marquez, safety/chemical administrator, stated "Trust me there is nothing wrong with the water."

Defendant Heldman later told Plaintiff that some of the citizens of Atwater have always had problems with the water, and some even got cancer. Plaintiff feels that after serving five

years at Atwater he is exposed to health problems, may have internal damage, and may have side effects later in life, "as well as not being able to be sterile."

Plaintiff alleges that his skin discoloration and damage is due to the contaminated, cancer-causing water at Atwater. Defendant Hanson chose not to take pictures, claiming he did not see anything wrong and saying "there's nothing we can do" on April 21 and 22, 2020. Defendant Marquez chose not to be honest and did not tell Plaintiff the water is contaminated on May 5, 2020. Defendant Heldman denied Plaintiff help by refusing to take pictures but did tell Plaintiff on April 22 and 23, 2020 that citizens of Atwater had always had problems with the water being contaminated.

**B.     Allegations in Document Entitled First Amended Complaint**

Plaintiff's filing entitled First Amended Complaint alleges as follows:

Mr. Marquez was not positively assuring Plaintiff that the water at Atwater USP is safe to drink. Instead, he sarcastically lied. He never bothered to show Plaintiff what he considers safe.

Plaintiff is housed in the SHU. Staff are supposed to walk around weekly, but they do not.

Plaintiff does not have the financial means to hire an expert to test the water or to show what is in the water. And even if we were financially able, Plaintiff would not be able to prove what is in the water simply because he is in prison. The prison is a sovereign prison. All paperwork would disappear. Plaintiff needs help from the Court to prove his claim, such as having the water tested.

Mr. Hanson participated in this affirmative act by ignoring Plaintiff's request to see a doctor or skin specialist and has not bothered to show Plaintiff the results from his blood and urine analysis taken on July 14, 2020. Plaintiff needs a court order to help him with that. In addition, this supports Mr. Hanson's statement to Plaintiff that "There's nothing I can do for you." Mr. Hanson has repeatedly denied Plaintiff of medical treatment even after Plaintiff showed all three Defendants his skin condition on his stomach, neck and face.

Dr. Giron looked at Plaintiff on June 1, 2020 and agreed that the discoloration was from the water and scheduled Plaintiff for bloodwork and urine analysis to make sure it is not from anything else.

4

1    Neither Mr. Marquez nor Mr. Hanson have presented Plaintiff with any test from an
2    expert or professional report proving to Plaintiff that the water is safe to drink at Atwater USP.
3    Mr. Hanson has denied Plaintiff his right to have pictures taken. Plaintiff's skin has only gotten
4    worse.
5    Mr. Marquez, Mr. Hanson and Mr. Heldman bring their own water to work to drink.
6    When asked why, they reply "I always bring my own water," but they expect prisoners to drink
7    the contaminated water.
8    Black Lives Matter in prisons across the world, "where the same example of law
9    enforcement officials harm the Plaintiff, which society itself choose not to tolerate."
10   The water in Atwater is not safe to drink.
11   Defendant Heldman lied and told Plaintiff that the staff does not bring their own water to
12   drink. Plaintiff has been at Atwater for close to five years and has continuously seen staff bring
13   water bottles to work from their homes. Defendant Heldman told Plaintiff twice to write a request
14   and give them to him so that Defendant Heldman could get pictures taken. Defendant Heldman
15   has not returned to help Plaintiff with these requests.
16   Defendant "Heldman has not only told Plaintiff that the water is unsafe, also in the
17   community of Atwater, that is not a rumor, why would anyone lie about getting cancer[.]"
18   To say that drinking contaminated water is a rumor and is insufficient, especially to assist
19   in Plaintiff's claim, shows prejudice. Plaintiff asks why the courts would make a statement so
20   discouraging. The water in Atwater and the community is obviously not safe and Plaintiff's skin
21   discoloration is not a rumor; instead, it is a fact.
22   Defendant Heldman said he knows that the water at Atwater is unsafe to consume. He
23   along with other officials failed to take reasonable measures to [incomprehensible] the facts,
24   especially after viewing Plaintiff's skin.
25   Plaintiff is not looking just for money but would accept a suspended sentence and to be
26   released from prison.
27   Plaintiff's Attachment A was entitled "Definition Memorandum & Questionnaire
28   (Stipulations)." It asks six questions concerning USP-Atwater, the water there, the health effects

of contaminated water, Plaintiff's condition, and Plaintiff's history.

## III. ANALYSIS OF PLAINTIFF'S FILINGS

### A. Original Complaint

#### 1. <u>Legal Standards</u>

"The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citing *Helling v. McKinney*, 509 U.S. 25, 31 (1993)). "It is cruel and unusual punishment to hold convicted criminals in unsafe conditions." *Helling*, 509 U.S. at 33. Prison officials may not "ignore a condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year." *Id.* Prison officials violate these Eighth Amendment guarantees when they are deliberately indifferent to such conditions. *Id.* at 35. There are objective and subjective components of this test.

First, the objective standard requires that the alleged deprivation be "sufficiently serious" and, where a failure to prevent harm is alleged, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)).

A prisoner must allege both that he will be harmed and that "society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." *Helling*, 509 U.S. at 36. Therefore, a "prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Id.*

Second, the subjective standard requires that the prison official actually "know of and disregard an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837; *Anderson v. County of Kern*, 45 F.3d 1310, 1313 (9th Cir. 1995). A prison official must ''be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . must also draw the inference." *Farmer*, 511 U.S. at 837. Liability may follow only if a prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id*. at 847. When extrapolated from circumstantial evidence, the substantial risk of serious harm must be so blatantly obvious that Defendants had to

have been aware of it. *Foster v. Runnels*, 554 F.3d 807, 814 (1970); *see also Conn v. City of Reno*, 591 F.3d 1081, 1097 (9th Cir. 2010) (holding that the magnitude of the risk must be "so obvious that [the defendant] must have been subjectively aware of it"), *vacated*, 563 U.S. 915 (2011), *reinstated in relevant part*, 658 F.3d 897 (9th Cir. 2011).

The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial "risk of serious damage to his future health . . . ." *Farmer*, 511 U.S. at 843. "[D]eliberate indifference entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with the knowledge that harm will result." *Id.* at 835. This "deliberate indifference" standard is equivalent to ''recklessness,'' in which ''a person disregards a risk of harm of which he is aware.'' *Id.* at 836–37.

### 2. Application to Plaintiff's Claims

Based on the legal standards above, the Court finds that Plaintiff's original complaint has not stated any cognizable claims.

Beginning with the objective factor, Plaintiff has not alleged facts showing that he is incarcerated under conditions posing a substantial risk of serious harm. At the outset, Plaintiff has not sufficiently alleged facts showing that the water is contaminated. He does not allege that he has seen any tests or reports of water contamination. He does not allege that any professional has told him that the water is contaminated. He has not alleged that any inspector has found contamination. He also does not describe any specific type of contamination.

And although he alleges Defendant Heldman, a Special Housing Unit Lieutenant, told him that the citizens of Atwater have sometimes complained that they have gotten cancer from the water, this second-hand rumor is insufficient, even at the pleading stage, to establish that the water is in fact contaminated. Moreover, Plaintiff does not allege that he has cancer. Additionally, even Plaintiff alleges that the person with information about safety and chemicals has assured him that the water is fine.

Additionally, Plaintiff does not adequately allege that his symptoms are due to any contamination in water. For instance, he does not allege a medical professional told him that

those symptoms are due to water contamination or that medical texts say so. He does not allege that any medical advice or literature establishes that his symptoms are consistent with water contamination. Plaintiff alleges that he "feels . . . his health is definitely at high risk," and he "feels damage may be done internally and may result in side effects," but this unfounded speculation is not enough on its own to establish a claim for violation of his constitutional rights.

Turning to the subjective factor, Plaintiff does not allege that any defendant is subjectively aware that his health is at risk but fails to do anything about it. The safety/chemicals administrator has told Plaintiff that the water is fine and there are no allegations establishing that he actually believed otherwise. Plaintiff does not allege that Defendant Hanson knows about the risk, and he does not allege Defendant Heldman was indifferent to the risk or that he could do anything about it. Again, Plaintiff does not allege that anyone at the prison believes that Plaintiff is suffering from poisoning due to the water.

Therefore, Plaintiff has failed to show that defendants ignored a condition of confinement that is sure or likely to cause serious illness and needless suffering. As such, the Court finds Plaintiff failed to state any cognizable claims in his original complaint.

### B.     Document Entitled First Amended Complaint

Plaintiff's filing entitled the First Amended Complaint did not set forth all facts or claims. It does not state who are defendants Plaintiff intends to sue. Instead, it refers to his earlier complaint, gives more information about some of the facts set forth in his original complaint, and makes arguments why the Court's screening order was wrong and disregarded his rights. Plaintiff also included an attached "Questionnaire" with questions for the Court asking if the courts were aware of certain facts.

This is not a proper First Amended Complaint because it is not a complete document with all of Plaintiff's claims and facts supporting those claims. As the Court explained in its first screening order:

> Plaintiff is advised that an amended complaint supersedes the original complaint, *Lacey v. Maricopa County*, 693 F 3d. 896, 907 n.1 (9th Cir. 2012) (*en banc*), and it must be complete in itself without reference to the prior or superseded pleading, Local Rule 220. Therefore, in an amended complaint, as in an original complaint,

> each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "First Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

(ECF No. 7 at 8).

Additionally, the Court does not respond to questionnaires.

## IV. FAILURE TO FILE RESPONSE TO SCREENING ORDER

Despite the Court's order for Plaintiff to file a response within 30 days of its September 1, 2020 order, Plaintiff failed to file any response.

"In determining whether to dismiss a[n] [action] for failure to prosecute or failure to comply with a court order, the Court must weigh the following factors: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to defendants/respondents; (4) the availability of less drastic alternatives; and (5) the public policy favoring disposition of cases on their merits." *Pagtalunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002) (citing *Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992)).

"'The public's interest in expeditious resolution of litigation always favors dismissal.'" *Id.* (quoting *Yourish v. California Amplifier*, 191 F.3d 983, 990 (9th Cir. 1999)). Accordingly, this factor weighs in favor of dismissal.

As to the Court's need to manage its docket, "[t]he trial judge is in the best position to determine whether the delay in a particular case interferes with docket management and the public interest…. It is incumbent upon the Court to manage its docket without being subject to routine noncompliance of litigants...." *Pagtalunan*, 291 at 639. Plaintiff has failed to respond to the Court's screening order. This failure to respond is delaying the case and interfering with docket management. Therefore, the second factor weighs in favor of dismissal.

Turning to the risk of prejudice, "pendency of a lawsuit is not sufficiently prejudicial in and of itself to warrant dismissal." *Id.* at 642 (citing *Yourish*, 191 F.3d at 991). However, "delay inherently increases the risk that witnesses' memories will fade and evidence will become stale," *id.* at 643, and it is Plaintiff's failure to comply with a court order that is causing delay.

Therefore, the third factor weighs in favor of dismissal.

As for the availability of lesser sanctions, at this stage in the proceedings there is little available to the Court which would constitute a satisfactory lesser sanction while protecting the Court from further unnecessary expenditure of its scarce resources.  Considering Plaintiff's incarceration and *in forma pauperis* status, monetary sanctions are of little use.  And, given the stage of these proceedings, the preclusion of evidence or witnesses is not available.

Finally, because public policy favors disposition on the merits, this factor weighs against dismissal.  *Id.*

After weighing the factors, in combination with the Court's screening order, the Court recommends dismissal with prejudice.

**V.    CONCLUSION AND RECOMMENDATIONS**

For the foregoing reasons, the Court HEREBY RECOMMENDS that:

1.    This action be dismissed with prejudice for failure to state a claim and failure to comply with a court order; and

2.    The Clerk of Court be directed to close this case.

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within twenty-one (21) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:    **October 16, 2020**                    /s/ Erica P. Grosjean
                                                                        UNITED STATES MAGISTRATE JUDGE